UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CHERYL JOHNSON-MORRIS, individually and on behalf of all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> SANTANDER CONSUMER USA, INC., an Illinois corporation, <br><br> Defendant. | 16 C 1456 |

## MEMORANDUM OPINION AND ORDER

CHARLES P. KOCORAS, District Judge:

Plaintiff Cheryl Johnson-Morris filed her original Class Action Complaint in this action in the Circuit Court of Cook County on December 18, 2015, alleging violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, and the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 277, by Defendant Santander Consumer USA, Inc. ("Santander"). Santander removed the action to this Court on January 28, 2016, *see* Dkt. 1, and then sought dismissal of all claims. *See* Dkts. 8-9. Johnson-Morris responded with an amended complaint (Dkt. 14), again asserting violations of the FDCPA (Count I) and the TCPA (Counts II and III). Now before the Court is Santander's motion pursuant to Fed. R. Civ. P. 12(b)(6) to dismiss the FDCPA claim (Count I) in Johnson Morris's First Amended Complaint ("Complaint"), as untimely and for failure to allege a cognizable claim under that Act. For the following reasons, Santander's Partial Motion to Dismiss [22] is denied.

## BACKGROUND

The Court assumes the following allegations in Johnson-Morris's Complaint to be true for purposes of the instant Motion to Dismiss. Defendant Santander is an Illinois limited liability company principally located in Dallas, Texas, in the business of servicing consumer debt, including "its own loans" and "loans originated by other companies." Dkt. 14, ¶¶ 9, 14. "Among other things, it creates and sends monthly statements to consumers, collects loan payments, and processes loan payments," and "regularly collects or attempts to collect debts owed to others." *Id*. Santander is thus alleged to be a "'debt collector' as that term is defined in the FDCPA." *Id*.

A significant portion of Santander's $24 billion consumer loan portfolio consists of "nonprime' auto loans," *i.e.*, "'nonprime receivables' from consumers 'who do not qualify for conventional consumer finance products as a result of, among other things, a lack of or adverse credit history, low income levels and/or the inability to provide adequate down payments." *Id*. at ¶¶ 1 (quoting Consumer USA Holdings Inc. Annual Report) and 14. In November 2009, "Santander reached an agreement with HSBC's auto finance entities to enter into a loan servicing agreement for its entire U.S. auto loan portfolio, which was in liquidation." *Id*. at ¶ 25. "On or about March 15, 2010, the aforementioned loan servicing agreement between Santander and HSBC closed and took effect, and Santander acquired the servicing rights to collect on Plaintiff's auto loan." *Id*. at ¶ 26. "At the time when Santander acquired the servicing rights to collect on Plaintiff's auto loan, she was unemployed, and she owed late fees in arrears and was otherwise in default. *Id*. at ¶ 27.

According to Johnson-Morris's Complaint, "Santander placed incessant calls to Plaintiff in efforts to collect on her debt," including between 20 and 30 prerecorded voice calls and "many dozens" of "automatic telephone dialing system" calls. *Id*. at ¶¶ 28, 30. Johnson-Morris also alleges that she "made debt payments to Santander online and over the phone," "Santander processed her payments through a service it used in partnership with Western Union," and "Plaintiff was charged a fee for this service, even though no such fee was authorized by any agreement between Plaintiff and Santander or any specific provision of existing law." *Id*. at ¶ 31. Specifically, the Complaint details a $15 charge for a phone payment in March 2010 and eleven $5 charges for internet payments between April 2010 and February 2011. *Id*. at ¶ 32.

Western Union allegedly "kept a portion of the fees paid by Plaintiff and Santander kept the remainder." *Id*. at ¶ 33, "As such, the convenience fees that Plaintiff paid to make her Santander consumer debt payments exceeded any actual pass-through costs that Santander paid to third parties to process such payments." *Id*. Count I of Johnson-Morris's Complaint (which Santander now moves to dismiss) alleges that Santander's collection of these "convenience fees" violated 15 U.S.C. § 1692f(1) of the FDCPA, "which prohibits debt collectors from collecting 'any amount' concerning a consumer debt unless such amount is 'expressly authorized by the agreement creating the debt or permitted by law.'" *Id*. at ¶ 48. According to the Complaint, "the consumer debts owed by Plaintiff and the members of the Classes were, in effect, artificially enlarged, and they each paid and lost amounts of money above and beyond what they legally owed." *Id*. at ¶ 50.

## DISCUSSION

Santander attempts two arguments for dismissing Johnson-Morris's FDCPA claim: (1) that it was filed outside of the FDCPA's one-year statute of limitations and is therefore untimely, and (2) that the "convenience fees" at issue are not prohibited under the FDCPA, and thus Plaintiff has failed to allege an actionable violation of that Act. *See* Dkt. 23, at 4-13. The Court addresses each argument, in turn.

### I. Timeliness

#### A. *American Pipe* Tolling

Santander contends that Plaintiff's FDCPA claim is untimely because it was filed more than a year after Plaintiff paid her last "convenience fee" to Santander on February 18, 2011. *Id.* at 4. Johnson-Morris concedes that "under ordinary circumstances she had until February 18, 2012 to bring her claim," Dkt. 30, at 3-4, but argues that the statute of limitations on her FDCPA claim was tolled under the rule of *American Pipe & Constr. Co. v. Utah*, 414 U.S. 538 (1974). As both sides acknowledge, *American Pipe* held that "the commencement of a class action suspends the applicable statute of limitations as to all members of the class who would have been parties had the suit been permitted to continue as a class action." Dkt. 23, at 5 (quoting *American Pipe*, 414 U.S. at 554); Dkt. 30, at 2 (same). Invoking that rule, Johnson-Morris maintains that two prior class actions against Santander suspended the statute of limitations on her FDCPA claim here: *Haynes v. Santander Consumer USA Inc.*, No. 2:11-cv-2586 (N.D. Ala. filed July 28, 2011), and *Bonner v. Santander Consumer USA Inc.*, 2:12-cv-2183 (N.D. Ala. filed June 26, 2012).

Santander acknowledges that *Haynes* was filed in July 2011 and "sought to certify the very broad class of all current and former Santander customers over a six-year period," Dkt. 23, at 7; and that *Bonner* was filed in June 2012 and "sought to certify a nationwide putative class." *Id*. Thus, Santander does not dispute that Johnson-Morris—whose loan Santander serviced from March 2010 to February 2011, Dkt. 14, ¶¶ 26-32—was a putative member of the *Haynes* and *Bonner* class actions from July 2011 until at least November 2015, when the class FDCPA claim in *Bonner* was abandoned. Dkt. 23, at 8-9. Nor does Santander dispute that this period would be sufficient to render Johnson-Morris's FDCPA claim in this case timely, if *American Pipe* tolling applies. *See id.* at 6 ("Plaintiff's only hope is to chain together both *Haynes* and *Bonner*."). And it is also undisputed that *American Pipe* tolling applies to a later claim that is "substantially similar," and that "FDCPA class claims were alleged in *Haynes* and *Bonner*." Dkt. 23, at 5-7. Instead, Santander argues that the particular FDCPA claims asserted in *Haynes* and *Bonner* were "far too dissimilar to Plaintiff's claim to invoke *American Pipe* tolling." *Id*. at 7. The Court disagrees.

As the Supreme Court explained in *Johnson v. Railway Express Agency, Inc.*, 421 U.S. 454, 467 (1975), *American Pipe* applies when the earlier class suit involved "the same cause of action subsequently asserted." The Seventh Circuit has similarly reminded that *American Pipe* requires the same "legal claims" in the earlier and later-filed actions. *See Sawyer v. Atlas Heating and Sheet Metal Works, Inc.*, 642 F.3d 560, 562 (7th Cir. 2011) (*American Pipe* does not apply to "different legal claims" (citing *In re Copper Antitrust Lit.*, 436 F.3d 782, 793-97 (7th Cir. 2006)). Heeding these

- 5 -

warnings, courts in this district have considered not only whether the later-filed claim invokes the same statute, but also whether the underlying factual allegations in the earlier and later-filed claims are sufficiently similar to constitute the same "cause of action." *See*, *e.g.*, *Balmes v. Ill. Bell. Tel. Co.*, No. 15 C 2685, 2016 WL 1019764, at *5 (N.D. Ill. Mar. 15, 2016) (*American Pipe* inapplicable "to claims dealing with identical facts but different legal theories or vice versa").[1]

"In other words, the emphasis seems to be on the similarity of the claims and the underlying factual predicates between the proposed claims for which tolling is asserted and the putative class claims in the prior litigation." *Wiggins v. Ill. Bell. Tel. Co.*, No. 15 C 02769, 2015 WL 6408122, at *4-5 (N.D. Ill. Oct. 22, 2015) (quoting *Sellers v. Bragg*, No. 04 C 3663, 2005 WL 1667406, at *6 (N.D. Ill. July 13, 2005)). To determine such similarity, Santander's authority teaches "that a court should look to the class-action (or collective-action) complaint to determine whether its claims are 'substantially similar' to the ones now brought individually." *Id.*; *see also* Dkt. 23, at 7-8 (citing *Wiggins*). Following that approach here, a simple comparison of the *Haynes* and *Bonner* class-action complaints with Johnson-Morris's FDCPA claim demonstrates that the requirements of *American Pipe* have been met, and that Johnson-Morris's FDCPA claim was tolled by those earlier cases.

---

[1] *See also Scott v. Ill. Bell Tel. Co.*, -- F. Supp. 3d --, 2016 WL 910507, at *5 (N.D. Ill. Mar. 10, 201) ("*American Pipe* does not apply when the class claim and subsequent individual claim turn on the same factual allegations but advance different legal theories."); *Swanigan v. Argent Mortg. Co.*, No. 10 C 1039, 2010 WL 2773889, at *4 (N.D. Ill. Jul. 14, 2010) (considering the dissimilarity of "the individual factual issues" in the earlier and later-filed cases).

Like Johnson-Morris, a class representative plaintiff in *Haynes* (Ruth Davis) "initially financed a vehicle through HSBC," which Santander later came to service (though by acquisition, as opposed to a loan servicing agreement). *See* Dkt. 23-2, ¶ 37. Also like Johnson-Morris, Ms. Davis complained that she was "charged unauthorized fees" by Santander, alleged that the same "scheme affected all class members similarly," asserted a class-wide issue of whether Santander "had a policy and uniform practice with respect to harassing, misleading, charging, and collecting unauthorized fees," and contended that Santander violated § 1692f "by using unfair and/or unconscionable means in attempting to collect alleged debts." *Id*. at ¶¶ 43(b)-(e), 49. Contrary to Santander's contentions, moreover, while the *Haynes* complaint did mention repossession fees and late fees as examples of the "undue fees" Santander had charged (*see id*. at ¶¶ 13, 39-41), its class-wide allegations are not so limited and instead refer to "unauthorized fees" generally. *See id*. at ¶ 42.

The *Bonner* complaint similarly alleged Santander's efforts to collect on various vehicle loans and related imposition of "improper fees never agreed to and not authorized by the contracts they are servicing." Dkt. 23-3, ¶¶ 17, 37, 38, 52-53, 67-68, 82-83, 97-98, 112-13, 129-30, 151, 156(d). Also like the *Haynes* complaint and Johnson-Morris's claim here, the *Bonner* complaint alleged that the same "scheme affected all class members similarly," asserted a class-wide issue of whether Santander "had a policy and uniform practice with respect to . . . charging and collecting unauthorized fees," and contended that Santander violated § 1692f(1) by collecting "fees" and other charges "not expressly authorized by the contract or

- 7 -

permitted by law." *Id.* at ¶¶ 156, 168. And, again, while the *Bonner* complaint referred to "repossession fees" and "late fees" charged some plaintiffs (*id.* at ¶¶ 21, 152-53), the above-referenced allegations of many other named plaintiffs and the class-wide allegations are not so limited. *See id.* at ¶¶ 17, 37, 38, 52-53, 67-68, 82-83, 97-98, 112-13, 129-30, 151, 156(d).

This comparison demonstrates, as Johnson-Morris asserts, that the FDCPA claim in this case "deals with the same type of violation of the same subsection of the same statute as applied to the same category of debt" as the two previous class actions against Santander in *Haynes* and *Bonner*. Dkt. 30, at 8. That similarity compels the conclusion that Johnson-Morris's FDCPA claim here was tolled under *American Pipe* by those earlier class actions. And the additional inquiry that Santander urges—whether this suit concerns "the same evidence, memories, and witnesses" as the earlier actions—buttresses that result. Dkt. 23, at 7. As Johnson-Morris also explains (and Santander does not dispute), "the evidence in all cases appears that it would be exactly the same: (1) copies of the contracts creating the debts collected by Santander, and (2) records of the fees charged by Santander to service the debt." Dkt. 30, at 8. Given this commonality of issues and the evidence they entail, Johnson-Morris's FDCPA claim here was tolled under *American Pipe* by *Haynes* and *Bonner*, and thus timely filed within the termination of the class claims in those earlier cases.

### B. Discovery Rule

In addition to *American Pipe* tolling, Johnson-Morris also invokes the discovery rule as a further defense to Santander's statute of limitations argument. *Id.*

- 8 -

at 9-12. Santander, in turn, disputes the applicability of the discovery rule to an FDCPA claim, citing the Supreme Court's decision in *TRW Inc. v. Andrews*, 534 U.S. 19, 27 (2001). *See* Dkt. 23, at 10. As Santander acknowledges, however, *TRW* involved a different statute (the Fair Credit Reporting Act) in which Congress had already enacted a more limited discovery rule allowing suit to be brought "within two years after discovery by the individual of [a] misrepresentation." *See TRW*, 534 U.S. at 28 (quoting 15 U.S.C. § 1681p). Given that narrower provision, *TRW* concluded that "Congress implicitly excluded a general discovery rule by explicitly including a more limited one." *Id.* As at least one other court in this district has observed, the FDCPA contains no such provision signaling congressional intent to preclude application of the discovery rule to that Act. *See Greenfield v. Kluever & Platt, LLC*, 2010 WL 604830, at *2 (N.D. Ill. Feb. 16, 2010); *see also Stone v. Wash. Mut. Bank*, 2011 WL 3678838, at *8 (N.D. Ill. Aug. 19, 2011). And since Seventh Circuit authority directs application of the discovery rule to federal statutory claims "in the absence of a contrary directive from Congress,"[2] this Court concurs with *Greenfield* and *Stone* in holding that the discovery rule applies to an FDCPA claim.[3]

---

[2] *Sidney Hillman Health Ctr. of Rochester v. Abbott Labs., Inc.*, 782 F.3d 922, 926 (7th Cir. 2015) (discovery rule is "read into statutes of limitations in federal-question cases in the absence of a contrary directive from Congress" (ellipses omitted, quoting *Cada v. Baxter Healthcare Corp.*, 920 F.2d 446, 450 (7th Cir. 1990)).

[3] To the extent *Butler v. J.r.S-I, Inc.*, No. 15 C 6059, 2016 WL 1298780 (N.D. Ill. April 4, 2016), indicated otherwise, that discussion was notably *dicta*, given *Butler's* ultimate conclusion that the statute of limitations on the plaintiff's FDCPA claim was nevertheless equitably tolled until "she became aware of" the underlying state action at issue in her FDCPA claim. *See id.* at *4.

Santander's companion defense to Johnson-Morris's reliance on the discovery rule—that "she was on notice of her FDCPA claim as early as 2010 and in any event, no later than March 2011 when the final fee was assessed," Dkt. 23, at 9—is not fodder for a motion to dismiss. "Dismissing a complaint as untimely at the pleading stage is an unusual step, since a complaint need not anticipate and overcome affirmative defenses, such as the statute of limitations." *Sidney Hillman*, 782 F.3d at 928 (quoting *Cancer Found., Inc. v. Cerberus Cap. Mgmt., LP*, 559 F.3d 671, 674 (7th Cir. 2009)). Thus, while it may be appropriate to dismiss a claim "where the allegations of the complaint itself set forth everything necessary to satisfy the affirmative defense," *id*. (quoting *Chi. Bldg. Design, P.C. v. Mongolian House, Inc.*, 770 F.3d 610, 613-14 (7th Cir. 2014)), such "departure from orthodoxy" is not called for here, given the factual issues that Johnson-Morris identifies.

For instance, Johnson-Morris's Complaint alleges that "Santander processed her payments ***through a service it used in partnership with Western Union***," Dkt. 14, ¶ 31 (emphasis added), and that "Santander often pushes consumers to pay ***through a Western Union service***—which imposes large processing fees that are surreptitiously shared with Santander." *Id*. at ¶ 4 (emphasis added). It is thus unclear from the Complaint whether Johnson-Morris knew at the time who (as between Western Union and Santander) charged the convenience fee. Relatedly, Johnson-Morris further alleges and argues that despite her prior awareness of the processing fees charged in connection with her payments, "she had no way of discovering that the fees weren't

costs that were simply passed on by Santander, but instead were used by Santander to turn a profit." Dkt. 30, at 10; Dkt. 14, ¶ 34 ("At no time was this fee sharing disclosed to Plaintiff, and she did not know nor did she have reason to know that such fees were shared and were not actual pass-through costs required to process her payment.").

"The discovery rule starts the statute of limitations running only when the plaintiff learns that he's been injured, and by whom." *U.S. v. Norwood*, 602 F.3d 830, 837 (7th Cir. 2010); *Petra Presbyterian Church v. Vill. of Northbrook*, 489 F.3d 846, 850 (7th Cir. 2007) ("a tort claim does not arise until there is an injury . . . or until the injury (and who caused it) is discovered or should have been discovered" (citations omitted)); *Barry Aviation v. Land O'Lakes Mun. Airport Comm'n*, 377 F.3d 682, 688 (7th Cir. 2004) ("accrual occurs when the plaintiff discovers that 'he has been injured and who caused the injury'" (quoting *United States v. Duke*, 229 F.3d 627, 630 (7th Cir. 2000)). Here, because the Complaint does not indicate when Johnson-Morris knew she had been injured and that Santander caused her injury, the timeliness of her FDCPA claim must await "a more complete factual record." *Sidney Hillman*, 782 F.3d at 929 (if "there is a conceivable set of facts, consistent with the complaint, that would defeat a statute-of-limitations defense, questions of timeliness are left for summary judgment (or ultimately trial)" for determination "based on a more complete factual record").

## II. FDCPA Claim for "Incidental" Fees

Finally, Santander contends that, wholly apart from its potential untimeliness, Johnson-Morris's FDCPA claim still "fails as a matter of law" because § 1692f(1)

prohibits only fees "incidental to the principal obligation." Dkt. 23, at 12; *see also* 15 U.S.C. § 1592f (prohibiting "(1) The collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law."). To support this contention, Santander cites a recent decision from the Central District of California, *Flores v. Collection Consultants of Cal.*, No. 14-0771, 2015 WL 4254032 (C.D. Cal. Mar. 20, 2015), which held that a $5 convenience fee did not violate §1692f(1). "The majority of courts have determined, however, that similar flat transaction fees are incidental to the principal obligation, and thus, fall under the scope of the FDCPA." *See Wittman v. CB1, Inc.*, No. 15-105-BLG-BMM, 2016 WL 3093427, at *2 (D. Mont. June 1, 2016) (distinguishing *Flores* and citing cases).[4]

    *Flores* is also distinguishable from the present case in two important respects. Unlike *Flores*, where the charges at issue "did not inure benefits to the collector," 2015 WL 4254032, at *9, Johnson-Morris alleges that the convenience fees Santander charged "exceeded any actual pass-through costs that Santander paid to third parties to process such payments," Dkt. 14, ¶¶ 4, 33, and thus, "were used by Santander to turn a profit." Dkt. 30, at 10. Additionally, whereas *Flores* noted that debtors were not "steered" to make credit card payments that would generate the fees at issue, *id.* at

---

[4] *See, e.g.*, *Weast v. Rockport Fin., LLC*, 115 F. Supp. 3d 1018, 1021 (E.D. Mo. 2015); *Quinteros v. MBI Assocs., Inc.*, 999 F. Supp. 2d 434, 438-39 (E.D.N.Y. 2014); *Shami v. Nat'l Enter. Sys.*, No. 09-cv-722, 2010 WL 3824151, at *3-4 (E.D.N.Y. Sept. 23, 2010); *Longo v. Law Offices of Gerald E. Moore Assocs., P.C.*, No. 04 C 5759, 2005 U.S. Dist. LEXIS 48493, at *13 (N.D. Ill. Feb. 3, 2005).

*10, Johnson-Morris alleges that "Santander often pushes consumers to pay through a Western Union service—which imposes large processing fees that are surreptitiously shared with Santander—even though other free methods of timely payment are in fact available." Dkt. 14, ¶ 4. Johnson-Morris also alleges that "Santander has routinely represented that payment methods with convenience fees, processing fees, or other such fees were the only payment methods available for consumers to use to make timely payments on their personal debts, even when other no-cost or lower-cost payment methods were actually available." *Id.* at ¶ 17. And further, that "Consumers complain about Santander's fee-steering, but due to its other practices—such as imposing stiff late fees while taking up to two full business weeks to post payments—consumers feel compelled to pay Santander's arbitrary fees anyways." *Id.* at ¶ 18.

These facts alone require departure from *Flores*, just as other courts have held.[5] But also, Santander's argument that its "convenience fees" are not "incidental" to the underlying debt is itself a departure from Seventh Circuit authority demonstrating that

---

[5] *See, e.g.*, *Wittman*, 2016 WL 3093427, at *3 (disagreeing with *Flores* and denying 12(b)(6) motion where record was "unclear as to whether [the collector] retains any portion of the transaction fee"); *Lindblom v. Santander Consumer USA Inc.*, No. 1:15-cv-990, 2016 WL 2841495, at *6-7 (E.D. Cal. May 9, 2016) (denying Rule 12(c) motion; disagreeing with *Flores* and following "the lead of the overwhelming majority of other courts"); *Weast*, 115 F. Supp. 3d at 1022-23 (denying motion to dismiss: "the Court cannot say that Defendant would not receive any profit from charging $3.00 for each credit/debit card transaction"); *Shami*, 2010 WL 3824151, at *4 (denying rule 12(c) motion where there was "no evidence that the fees at issue were simply Defendant's attempt to pass the costs of third-party charges to Plaintiff"); *Longo*, 2005 U.S. Dist. LEXIS, at *13 (denying 12(b)(6) motion where "entire thrust" of collector's letter "was toward" telephone payments that required a $7.50 fee, and collector "would have received the $7.50 fee").

a charge is "incidental" to a debt within the meaning of § 1692f if it is incurred in connection with efforts to collect that debt, as was certainly the case here. *See Shula v. Lawent*, 359 F.3d 489, 493 (7th Cir. 2004) ("There is no doubt that the defendants' claim for the payment of costs by Shula was 'incidental' to Shula's alleged debt to the doctor. . . . Had it not been for the suit against Shula to collect the debt he owed the doctor, no claim for costs would have arisen.").

Nor is Santander's position strengthened by its repeated insistence that such fees are not "involuntary" and were instead "elected," because the payment methods that generate such fees are not "the only payment means available." Dkt. 23, at 11; Dkt. 31, at 10. "It is immaterial that the fee was optional and fully disclosed if the fee is impermissible altogether." *Acosta v. Credit Bureau of Napa County*, No. 14 C 8198, 2015 WL 1943244, at *3-4 (N.D. Ill. Apr. 29, 2015). Thus, as other courts have concluded, "offering a payment option that does not violate the statute does not save offering a payment option that would violate the statute, as the later is still an attempt to collect a fee which is prohibited by the FDCPA." *Weast*, 115 F. Supp. 3d at 1023. Accordingly, while Santander may indeed have meritorious arguments to support the permissibility of the convenience fees over which Johnson-Morris complains, those defenses must (as Santander acknowledges) await "a more developed factual record." *See* Dkt. 23, at 12 n.6. At this stage of the proceedings, accepting Johnson-Morris's allegations as true as the Court is required to do under Rule 12(b)(6), Santander's motion to dismiss Johnson-Morris's FDCPA claim must be denied.

## CONCLUSION

For the foregoing reasons, Defendant Santander's Partial Motion to Dismiss [22] is denied. Santander is allowed until July 26, 2016, to answer the Amended Complaint [14].

Dated: July 11, 2016

_____
Charles P. Kocoras
United States District Judge